**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JUDE S. SALAZAR,

    Plaintiff,

v.                                                                                                          No. CV 14-747 MCA/CG

LORENZO SILVA,

    Defendant.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** comes before the Court on Defendant Lorenzo Silva's *Martinez Report*, (Doc. 22), and *Motion for Summary Judgment on the Basis of Qualified Immunity, Failure to Exhaust Administrative Remedies and Other Grounds* ("Motion"), (Doc. 23), filed August 31, 2015; Plaintiff's *Motion to Cure and Exhaust all administrative remedies,* (Doc. 25), filed on September 30, 2015, which the Court construes as a Response to Defendant's Motion; and Defendant's *Reply to Response to Motion*, (Doc. 26), filed on October 26, 2015. Chief Judge Christina Armijo referred this case to U.S. Magistrate Judge Carmen E. Garza to perform legal analysis and recommend an ultimate disposition. (Doc. 3). The Court has considered the Motion, the Response, the Reply, and the relevant law. Because the Court finds that Plaintiff failed to exhaust the available administrative remedies, the Court **RECOMMENDS** that the Motion be **GRANTED** and the action be **DISMISSED WITHOUT PREJUDICE**.

**I.      Factual and Procedural Background[1]**

1. This case pertains to the conditions of Plaintiff's confinement at the Taos County Adult Detention Center ("Detention Center") in June and July of 2014. (*See* Docs. 1, 12).

2. Plaintiff, however, had previously been detained at the Detention Center. (Bates 00077). In April 2013, he was found to have damaged Detention Center property and was punished. (Bates 00077). Plaintiff filed a grievance regarding his punishment on April 19, 2013. (Bates 00078).

3. Defendant Silva had no involvement in disciplining Plaintiff in April 2013 since he began his began employment at the Detention Center as the Chief of Security on May 20, 2013. (Bates 00080). Defendant Silva continued in that position until September 10, 2014. (Bates 00080).

4. On May 21, 2014, Defendant Silva discovered two holes in A-pod and had maintenance staff patch them the same day. (Bates 00081, 00127). The next day he noticed that the filling had been dug out. (Bates 00081).

5. Plaintiff was residing in A-pod at the time. (Bates 00127).

6. After reviewing video footage showing Plaintiff and another inmate digging out the filling, Defendant Silva confronted Plaintiff. (Bates 00081, 00127). Plaintiff

---

[1] The facts on which the Court relies were derived from 1) Plaintiff's Amended Complaint, which was submitted under penalty of perjury, (Doc. 12 at 6); 2) the facts in Defendant Silva's Motion, (Doc. 22), that were not contested by Plaintiff; and 3) the facts in Plaintiff's Response, (Doc. 25), that Defendant Silva did not contest. D.N.M.LR-Civ. 56.1(b)-(c) (stating that material facts in the Motion and the Response "will be deemed undisputed unless specifically controverted"). Plaintiff's initial Complaint, (Doc. 1), contains additional allegations regarding the conditions of his confinement, but it is not a verified complaint and the allegations therein do not illuminate the issue of exhaustion. Accordingly, the Court does not consider those allegations here. *See Lanctec v. Novell*, 306 F.3d 1003, 1019 (10th Cir. 2002) ("A district court may treat a verified complaint "as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e)") (internal quotation marks omitted).

admitted to removing the filling from the wall "because he [was] bored and there is nothing better to do in the Pod." (Bates 00081, 00127).

    7.    Defendant Silva administered a 72-hour lockdown for Plaintiff in his A-pod cell as punishment. (Bates 00081, 00127).

    8.    Plaintiff did not file a grievance related to this incident and his Complaint does not raise any claims related to this incident. (Bates 00075; *see generally* Docs. 1, 12).

    9.    In June 2014, Defendant Silva again confronted Plaintiff and told him that he was going to be punished. (Doc. 25 at 2). Defendant Silva does not recall the basis for placing Plaintiff on lockdown. (Bates 00082).

    10.    Plaintiff, however, explains that Defendant Silva was punishing him for committing another infraction. According to Plaintiff, the following exchange occurred after Defendant Silva removed Plaintiff from his A-pod cell and told him he would be punished:

> I asked why [I was being punished] and then Defendant [Silva] told me that I was caught on camera lighting a cigarette of [sic] the power socket that was next to the phone in Unit A. I then was asked why do I continue to keep getting into trouble. I then told Mr. Silva that I was bored and need to stay busy, and asked him why don't he give us jobs to stay busy so we don't get into trouble. [H]e then told me that he was looking into it and that he will try but why should he when all I do is be distructive [sic] and cause trouble [a]nd that it really didn't matter because I was going to be placed in segregation and punished for about 15 day's [sic] as well as no visitation and canteen.

(*Id.*).

    11.    On June 6, 2014, at the direction of Defendant Silva, Plaintiff was moved from A-pod to C-pod and was placed on lockdown. (Bates 00078).

12. No disciplinary report was compiled against Plaintiff for the alleged infractions. (Doc. 12 at 3).

13. The cell in C-pod to which Plaintiff was transferred was a one person cell with another inmate named Marcos Suazo already in it. (Doc. 25 at 3, 5).

14. While he was being transferred to C-pod, Plaintiff told the officer transporting him that he and Mr. Suazo did not get along. (Doc. 25 at 1-2). He stated that he did not want to be placed with Mr. Sauzo and requested to be placed in his own cell. (Doc. 25 at 1-2).

15. Defendant Silva claims, however, that he placed Plaintiff in C-pod with Marcus Suazo because the two "knew one another and got along well." (Bates 00082).

16. Because the cell was a one person cell with another individual already in it, Plaintiff had to sleep on a mat on the floor. (Doc. 25 at 5).

17. Furthermore, Because of the size of the room, Plaintiff had to place his mat partially under Mr. Suazo's bed to avoid having the door hit his head when it was opened. (Doc. 25 at 5-6).

18. Plaintiff also claims that he had to eat on the floor since there was only one table. (Doc. 25 at 5).

19. According to Detention Center policies, inmates in C-pod are to be afforded "up to 4 hours but not less than 1 hour out-of-cell activity" on a daily basis. (Bates 00096, 00098).

20. Plaintiff asserts that he had to continually watch Mr. Suazo given their relationship. (Doc. 25 at 4).

21.     Defendant Silva asserts that he was not aware of any risk to Plaintiff's health or safety.  (Bates 00082).

22.     Plaintiff's concerns about Mr. Sauzo continued "for about 2 1/2 weeks till [he] just broke down and asked [Mr. Suazo] to be friends[.] [H]e replied yes and [they] would play games and talk to pass [the] time while incarcerated together."  (Doc. 25 at 4).

23.     Once in the new cell, Plaintiff continued to make requests to be transferred to a different cell.  (Doc. 25 at 3-4).  Plaintiff also told several officers that he wished to speak with Defendant Silva, repeatedly asked to see the misconduct report against him, and asked how long he would remain in segregation.  (Doc. 25 at 4).  He asserts that he received no responses.  (Doc. 25 at 3–4).

24.     On July 8, 2014, however, Plaintiff wrote a letter to "Cheif [sic] and Lt." requesting restoration of his visitation privileges, which had been taken away when he was moved to C-pod.  (Bates 00141).  The letter stated, "I have done what you have asked of me and that is stop getting in to [sic] trouble back here stop distroying [sic] Taos county property.  I have done 30 days segregation\loss of privileges."  (Bates 00141).  Plaintiff requested that he "please have one visit befor [sic] I leave this place, my wife[,] mother[,] and daughter all would love to see me befor [sic] I leave to prison." (Bates 00141).  Plaintiff concluded by stating, "I have stayed out of trouble and promise to stay that way."  (Bates 00141).

25.     The next day, July 9, 2014, Lt. Brenda Zamora wrote a memo to Plaintiff stating that she had reviewed his request with Defendant Silva and "the Director" and that they agreed to restore Plaintiff's visitation rights so he could see his family before

5

he left for prison.  (Bates 00142).  The letter concluded, "I'm sure you miss seeing your family make this right not only for you but your family also."  (Bates 00142).

26. On July 16, 2014, after 40 days in C-pod, Plaintiff was returned to A-pod. (Bates 00135–37).

27. At the time of Plaintiff's detention, Detention Center policy stated, "Any detainees wishing to grieve will fill out the [grievance] form fully and completely and deposit it in the locked box for his or her unit."  (Bates 00109).

28. Under the policy, the Chief of Security was responsible for reviewing and responding to grievances.  (Bates 00109).  If, however, "the detainee is not satisfied with the Chief of Security's resolution of the problem, he or she may appeal the grievance to the Director."  (Bates 00109).

29. The inmate handbook in effect at the time also discussed the filing of grievances.  (Bates 00124).

30. Specifically, the handbook states, "If a detainee contests a citation and sanction, a detainee can submit a Grievance regarding the citation or sanction to the Grievance Officer, so long as it is submitted within two working days of the issuance of the citation and sanction."  (Bates 00124).

31. The handbook informs inmates that "[a]ll complaints and grievances must be filed using the proper Detention Center forms."  (Bates 00124).

32. Plaintiff asserts that he submitted an informal complaint but it was never answered.  (Doc. 12 at 4).

33. Plaintiff did not, however, submit any grievances related to his lockdown and placement in C-pod during June and July of 2014.  (Bates 00075).

34. Plaintiff explains that he could not file a grievance regarding the disciplinary action against him because he had not been provided documentation "as to why he had been placed in segregation and striped [sic] of all privileges." (Doc. 25 at 4). He continues, "that's why it took me a while to gather evidence on what to properly grieve . . . ." (Doc. 25 at 4-5).

35. Plaintiff further claims that "when I did I asked for the proper paper (Grievance form) I was told to write what problem I had down on a peace [sic] of paper and give it to the officer on dutie [sic] to give to [Defendant] Silva or Lt. Zamora." (Doc. 25 at 4-5).

36. Plaintiff asserts that his transfer and lockdown in June and July 2014 violated 1) his Fourteenth Amendment right to due process and 2) his Eighth Amendment right to be free from cruel and unusual punishment. (Doc. 12 at 2-4).

## II. Standard of Review

### A. *Summary Judgment*

The court shall grant summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the burden of making a *prima facie* demonstration that there is no genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670–71 (10th Cir.1998) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). A fact is material if it might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Id.* If the moving party has demonstrated an

7

absence of material fact, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (internal quotations omitted).

"[W]here the non-moving party will bear the burden of proof at trial on a dispositive issue, that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment*." English v. Colorado Dep't of Corr.*, 248 F.3d 1002, 1007 (10th Cir. 2001) (internal citations and quotations omitted). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment.  There must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue. *See Anderson,* 477 U.S. at 249.  The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him.  *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1490 (10th Cir. 1995).  The facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein.  *See Adler*, 144 F.3d at 671.

### III.  Analysis

A civil rights action under § 1983 may be brought against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (1996).  To succeed on a claim under § 1983, an injured person must demonstrate a violation of a federally protected right, and must show that the deprivation was

committed by an individual acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Here, Plaintiff claims that Defendant Silva violated Plaintiff's right to due process under the Fourteenth Amendment and right to be free from cruel and unusual punishment under the Eighth Amendment when he transferred Plaintiff to another cell with less favorable conditions for 42 days without instituting disciplinary procedures against him. (Doc. 12 at 2-4). As Defendant Silva correctly notes, because Plaintiff was a pretrial detainee and the Eighth Amendment only applies to convicted prisoners, his cruel and unusual punishment claim actually falls under the purview of the Fourteenth Amendment. (Doc. 23 at 17) (citing *Bell v. Woflish*, 441 U.S. 520, 537 n.16 (1979)). The standards, however, are the same. *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1022 (10th Cir. 1996) (outlining two-pronged analysis for Eighth Amendment claims in a case involving a pretrial detainee).

In any event, Defendant Silva asserts that he is entitled to qualified immunity, that Plaintiff failed to exhaust his administrative remedies, and that Defendant Silva had no involvement in some of the events noted in Plaintiff's Complaint. (Doc. 23 at 3).[2] In his Response, Plaintiff does not contest that he did not file a grievance regarding his transfer and lockdown in June and July 2014. Instead, he asserts that he could not grieve the lack of disciplinary procedures since they were not initiated and he therefore had no decision to grieve. (Doc. 25 at 3). He also requests leave to exhaust his administrative remedies. (Doc. 25 at 6). Because the Court recommends finding that

---

[2] The Court does not read Plaintiff's Complaint as seeking to bring a claim related to incidents other than what occurred in June and July of 2014.

9

Plaintiff failed to exhaust his administrative remedies, it does not reach the rest of Defendant Silva's arguments.

### A. *Exhaustion*

The Prison Litigation Reform Act (PLRA) requires a prisoner to exhaust all available administrative remedies in suits, like Plaintiff's, brought under 42 U.S.C. § 1983.  42 U.S.C. § 1997e(a) (1996) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.").  Thus, before a court can proceed to the merits of a claim, it must establish that the plaintiff has properly exhausted the available administrative remedies for that claim.  *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.") (citations omitted).

Exhaustion serves two purposes.  First, it "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures."  *Woodford*, 548 U.S. at 89.  Second, it "promotes efficiency" by allowing claims to be resolved through settlement before litigation and by dissuading "the losing party [from] pursu[ing] the matter in federal court."  *Id.* "[E]ven where a controversy survives administrative

review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Id.* (internal quotation marks omitted).

To ensure the purposes of exhaustion are served, an inmate must comply "with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91. Moreover, inmates must complete the administrative or grievance process in its entirety. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim . . ."). Proper exhaustion also demands that an inmate "provide[] prison officials with enough information to investigate and address the inmate's complaint internally" and that the prison complaint be related to the claims brought in court. *Kikumura v. Osagie*, 461 F.3d 1269, 1282-1285 (10th Cir. 2006), *overruled on other grounds by Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242 (10th Cir. 2008).

However, inmates need only exhaust the *available* administrative remedies. "[A]n administrative remedy is not available under the PLRA if prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of administrative remedies." *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011) (internal quotation marks omitted) ("conclud[ing] that when a prison official inhibits an inmate from utilizing an administrative process through threats or intimidation, that process can no longer be said to be 'available.'"). Thus, although defendants "bear the [initial] burden of asserting and proving that the plaintiff did not utilize administrative remedies," once they do so,

the burden shifts and "the onus falls on the plaintiff to show that remedies were unavailable to him" due to the wrongful conduct of prison officials. *Id.* at 1254.

Here, an inmate seeking to file a grievance was required to "fill out the [grievance] form fully and completely and deposit it in the locked box for his or her unit." (Bates 00109; Bates 00124). Prison policies indicate that Plaintiff was to be permitted at least an hour out of his cell in C-pod, (Bates 00096, 00098), and further provide that inmates are to "have unimpeded access" to grievance forms. (Bates 00109). Plaintiff does not assert that he himself did not have access to the grievance forms. (*See generally* Doc. 25). Additionally, Plaintiff clearly understood the process since he had previously filed a grievance utilizing the proper grievance form. (Bates 00078) (Plaintiff's grievance regarding an incident in 2013). Nevertheless, Plaintiff failed to file any grievances pertaining to his confinement at the Detention Center in June and July 2014. (Bates 00075). He therefore failed to utilize the prison grievance procedure as set forth in the inmate handbook and Detention Center policies. (Bates 00124, 00109).[3]

Although Plaintiff contends that he initially complained about being placed with Mr. Suazo, made requests to be transferred, requested to speak with Defendant Silva, and requested to see the disciplinary report, these actions are insufficient to trigger the grievance process. *See Jernigan*, 304 F.3d at 1032 ("[T]he doctrine of substantial compliance does not apply" to PLRA's exhaustion requirement). Practically speaking,

---

[3] The Detention Center would do well to ensure that the steps required for exhaustion are clearly laid out for inmates and that the policies in the handbook mirror the official policies. Incongruity between the two may lead to confusion about proper grievance procedures and raise questions about the availability of administrative remedies. *See, e.g., Giano v. Goord*, 380 F.3d 670, 679 (2d Cir. 2004) (holding that an inmate's failure to exhaust was justified where prison policies lacked clarity on how inmate should have proceeded and the inmates interpretation of how to do so was reasonable). Since both the handbook and the official policies require a grievance to be filed and Plaintiff failed to do so, the current differences between the two are not germane to this case. But it is certainly conceivable that the inconsistencies between the two could impact the exhaustion analysis in the future.

prison officials cannot be expected to distinguish complaints about prison conditions and requests from prisoners that are made in passing from those that must be formally addressed.  The Detention Center's grievance process remedies this problem by requiring both inmates and prison officials to follow a set of procedures to address the issues raised by inmates.  The exhaustion requirement incentivizes compliance with those procedures by all parties involved since the risk of a lawsuit is at stake.  Plaintiff did not file a grievance and his other complaints and requests cannot make up for his failure to do so.  As such, his Fourteenth Amendment claims must be dismissed unless he can demonstrate that prison officials wrongfully prevented him from utilizing the grievance process.  *Tuckel*, 660 F.3d at 1254.

With respect to the conditions in C-pod on which Plaintiff's cruel and unusual punishment claim is predicated, there is nothing in the record establishing that prison officials prevented Plaintiff from filing a grievance regarding those conditions and Plaintiff has not asserted to the contrary.  (*See generally* Docs. 12, 25).  Because Plaintiff has failed to demonstrate that he was prevented by prison officials from filing a grievance regarding the conditions of his cell, the Court recommends that his cruel and unusual punishment claim be dismissed without prejudice.

As to his due process claim, which is predicated on the absence of any proceedings attendant to his transfer to C-pod and placement on lockdown, Plaintiff asserts that he could not file a grievance because there was no underlying adjudication of which to complain. (Doc. 25 at 4).  As the Court reads the Detention Center's policies and handbook, the absence of disciplinary proceedings or reports does not preclude an inmate from filing a grievance.  The only pertinent statement on the matter comes from

the handbook and reads, "If a detainee contests a citation and sanction, a detainee can submit a Grievance regarding the citation or sanction to the Grievance Officer, so long as it is submitted within two working days of the issuance of the citations and sanctions." (Bates 00124).  This policy in no way requires an inmate to be in possession of a citation to file a grievance.  Rather, it merely limits the time frame for filing such a grievance *after* a citation or sanction is issued.  Since no report was filed and no disciplinary proceedings were initiated, Plaintiff should have filed a grievance complaining about the absence of such procedures and contesting his transfer to C-pod.  Plaintiff's requests to see the disciplinary report and to speak with Defendant Silva are, as noted above, insufficient to trigger the grievance process.  The lack of a disciplinary report cannot be said to have prevented Plaintiff from filing a grievance.

      Plaintiff's final assertion is that when he asked for a grievance form in order to grieve the lack of disciplinary proceedings, he was told to write his issue on a piece of paper and submit it to the officer on duty.  (Doc. 25 at 4-5).  Even assuming this to be true, it is unavailing.  To begin, Plaintiff does not state that he did indeed follow up on this suggestion and submit something in writing.  Even if he had, Plaintiff clearly understood that he needed to utilize the specified grievance form to properly initiate the grievance process since he had done so before.  (Bates 00078).  He offers no reason as to why he was unable to complete and submit the form during his daily period of out-of-cell activity.  Consequently, the failure of one guard to provide a grievance form upon request cannot be said to have rendered the grievance process unavailable to Plaintiff. Because Plaintiff failed to exhaust his administrative remedies and failed to establish

that he was prevented from doing so by Detention Center officials, his due process claim should be dismissed without prejudice.

IV.     Recommendation

For the foregoing reasons, the Court finds that Plaintiff has not created a genuine dispute of material fact regarding his ability to exhaust his administrative remedies and the fact that he failed to do so. Because he failed to utilize the grievance process, the PLRA precludes him from bringing suit under § 1983. Therefore, the Court recommends finding that Defendant Silva is entitled to summary judgment on all of Plaintiff's claims.

**IT IS THEREFORE RECOMMENDED** that Defendant Silva's *Motion for Summary Judgment on the Basis of Qualified Immunity, Failure to Exhaust Administrative Remedies and Other Grounds*, (Doc. 23), be **GRANTED** and that Plaintiff's Complaint, (Docs. 1, 12), be **DISMISSED WITHOUT PREJUDICE**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE